UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ABRAHAM HILDEBRAND, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) CAUSE NO: 4:19-cv-98 |
| | ) |
| RIPLEY COUNTY SHERIFF'S OFFICE, | ) |
| | ) |
|     Defendant. | ) |

## I. COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Abraham Hildebrand (hereafter "Hildebrand"), brings this action against Defendant, the Ripley County Sheriff's Office (hereafter "Defendant"), pursuant to the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq*.

## II. PARTIES

2. At all times relevant to this action, Hildebrand resided within the Southern District of Indiana.

3. At all times relevant to this action, Defendant maintained offices and conducted business within the Southern District of Indiana.

## III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367 and 42 U.S.C. § 12117.

5. At all times relevant to this action, Hildebrand was an "employee" as that term is defined by 42 U.S.C. § 12111(4).

6. Defendant is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A).

7. Hildebrand is a qualified individual with a disability, has a record of a disability, and/or is perceived and/or regarded as disabled, as that term is defined by the ADA, 42 U.S.C. § 12102(2) and 12111(8).

8. Hildebrand suffers from Post-Traumatic Stress Disorder ("PTSD"). This disability is a mental and psychological disorder that effects his brain and nervous system and can substantially effect sleeping, mood and dealing with traumatic situations. PTSD can also manifest in physical symptoms such as headaches.

9. Hildebrand satisfied his obligation to exhaust his administrative remedies, having timely filed U.S. Equal Employment Opportunity Commission Charges against Defendant, alleging discrimination based on his disability, his record of disability and/or Defendant's perception of Hildebrand as disabled and/or in retaliation for engagement in protected activity, as well as failure to accommodate and failure to engage in the interactive process. Hildebrand received his Right to Sue and now timely files the instant lawsuit prior to the expiration of the ninety (90) day window to file.

10. All of the events, transactions, and occurrences pertinent to this lawsuit have occurred within the geographical environs of the Southern District of Indiana and all parties are located therein.  Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.  **FACTUAL ALLEGATIONS**

11. Hildebrand began his employment with Defendant on July 23, 2007.

12. At all times relevant, Hildebrand has been employed as a Detective Sergeant. Hildebrand was promoted to Detective Sergeant in 2011.

13. At all times relevant, Hildebrand has had a disability, a record of a disability, or is

perceived and/or regarded as disabled by Defendant.

14. In April, 2017, Sheriff Jeff Cumberworth ("Cumberworth") requested that Hildebrand change the department's Standard Operating Procedure (SOP) relating to death investigations. Specifically, the SOP was changed to require the agency detective to attend all death scenes where the deceased was not under the direct care of a medical professional.

15. Hildebrand was the only detective employed with Defendant, and this new SOP would and did result in an increase in the number of death investigations conducted by Hildebrand.

16. Hildebrand updated the SOP according to Cumberworth's instructions, and Cumberworth approved the new SOP before it took effect.

17. Between April 23, 2017, and May 12, 2017, Hildebrand attended three separate death investigations of young children, including one in which the death of a three-year old was determined to be a homicide.

18. On May 13, 2017, Hildebrand was called at 7 a.m. for a death investigation, just hours after completing his previous investigation on May 12, 2017.

19. Due to the multiple child deaths he had investigated in such a short time, Hildebrand contacted Major Kurt Enneking ("Enneking") and requested Enneking respond to that morning's scene.

20. Enneking responded that he would be unable to attend the scene and ordered Hildebrand to respond and investigate, and Hildebrand did so.

21. Shortly following this investigation, Hildebrand began to display symptoms of PTSD, including, but not limited to, irritability, a short temper, trouble sleeping and isolation

from others.

22. Hildebrand had a scheduled vacation from June 4, 2017 through June 17, 2017 and hoped his symptoms would subside after some time off.

23. Following his return from vacation, Hildebrand was required to conduct death investigations on June 21, 2017; June 28, 2017 and July 6, 2017.

24. On July 20, 2017, Hildebrand was called out for an infant child unresponsive and not breathing. This infant was the stepbrother to the three-year old whose death had been determined to be a homicide in May. This infant death was also determined to be a homicide.

25. Following this investigation, Hildebrand's symptoms began to worsen, and his wife urged him to seek treatment.

26. Around this same time, Hildebrand spoke with an Indiana State Police Crime Scene Investigator who had worked with Hildebrand on the infant deaths that spring. The investigator told Hildebrand he had been diagnosed with PTSD after an earlier assignment, and investigating the child deaths had caused a recurrence of his PTSD symptoms.

27. As the investigator described his symptoms, Hildebrand realized he had many of the same symptoms and that he needed to seek treatment for his condition.

28. Hildebrand immediately contacted Sergeant Houseworth at the Sheriff's Office and advised Houseworth he needed to take action on the issues he was having.

29. Hildebrand met with Sheriff Cumberworth, who referred Hildebrand to Dr. Ed Connor in Erlanger, Kentucky, and asked him to make an appointment for a psychological evaluation. Erlanger, Kentucky is approximately 60 miles from Versailles, Indiana.

30. Cumberworth told Hildebrand the Sheriff's Office would pay for the evaluation in

Cash, presumably to prevent any other employees from learning about his condition.

31. Hildebrand met with Dr. Connor for an evaluation on August 31, 2017. Dr. Connor gave Hildebrand an initial diagnosis of PTSD, and send this diagnosis to the sheriff's department along with recommendations and restrictions.

32. When Hildebrand asked for a copy of Dr. Connor's report, he was told that because the Sheriff had paid for the evaluation, it would only be provided to the Sheriff.

33. Dr. Connor's recommendations were that Hildebrand take a break from death investigations and that he have more than one weekend a month where he was not "on call" and required to be available for death investigations.

34. Following this initial assessment with Dr. Connor, Hildebrand conducted death investigations on September 25, 2017 (two deaths); September 29, 2017; and October 19, 2017.

35. Despite Dr. Connor's recommendations, Hildebrand was only allowed one weekend per month when he was not "on call."

36. Because he was having trouble scheduling appointments with Dr. Connor in Kentucky, Hildebrand requested and was granted permission to begin treatment with Dr. Richard Thayer in Madison, Indiana.

37. Hildebrand had his initial assessment with Dr. Thayer on or about November 17, 2017.

38. Hildebrand conducted death investigations on November 23, 2017, and November 27, 2017. He continued his counseling with Dr. Thayer during this period.

39. On or about December 17, 2017, Hildebrand began a medical leave for reconstructive knee surgery scheduled for December 21, 2017. Hildebrand was not "on call"

5

during this time, and Major Enneking handled death investigations in Hildebrand's absence. Hildebrand continued his counseling sessions with Dr. Thayer during his medical leave.

40. Hildebrand returned from medical leave on January 9, 2018.

41. Hildebrand had a counseling session with Dr. Thayer on January 12, 2018. Shortly after this session, Sheriff Cumberworth asked Hildebrand how much longer his therapy with Dr. Thayer was going to take. Hildebrand asked if the expenses of the treatment were a problem and if a worker's compensation claim should be initiated. Sheriff Cumberworth said the department would continue to pay for the treatment but requested Hildebrand complete his treatment in the next session or two.

42. Hildebrand had counseling sessions with Dr. Thayer on January 19, 2018; January 27, 2018; and February 9, 2018. Following the February 9 session, Dr. Thayer released Hildebrand from treatment, as all his PTSD symptoms had subsided.

43. After being released from treatment, Hildebrand spoke with Sheriff Cumberworth, who told Hildebrand he believed his job performance had improved as a result of the treatment.

44. Hildebrand was subsequently called out for death investigations on February 19, 2018; March 7, 2018; March 26, 2018; April 11, 2018; April 14, 2018 (twice); and April 15, 2018.

45. Following the weekend of April 14-15, 2018, in which Hildebrand had three death investigations, Hildebrand asked Sheriff Cumberworth for some relief from death investigations. Hildebrand received no response and nothing was put in place to provide Hildebrand relief.

46. Hildebrand was called out for six additional death investigations between April

23, 2018 and June 2, 2018. On June 2, 2018, Hildebrand could not respond in a reasonable amount of time, so he requested Deputy Nuhring contact Major Enneking and inquire if he could respond faster than Hildebrand. Hildebrand quickly received a phone call from Enneking demanding to know where Hildebrand was and why he could not respond quickly to the scene.

47. On June 3, 2018, Hildebrand began observing that his PTSD symptoms had resurfaced following his long period of "on call" status and the high number of death investigations without relief, and made plans to discuss further treatment with Sheriff Cumberworth.

48. On June 4, 2018, Hildebrand was called into a meeting with Sheriff Cumberworth and Major Enneking regarding why he couldn't respond quickly on June 2, 2018. Hildebrand was told that anytime he would have to have a delayed response time, he would need to notify Major Enneking ahead of time, and if Major Enneking was not available, Hildebrand would need to remain available for any calls.

49. Hildebrand informed Sheriff Cumberworth that he needed a break from death investigations because there had been so many in a short period of time and Hildebrand was the only one responding to them. This constitutes a request for a reasonable accommodation and protected activity.

50. The Sheriff asked if the investigations were "causing issues with [Hildebrand's] head again." Hildebrand advised that they were.

51. Sheriff Cumberworth told Hildebrand "if you cannot handle the job mentally, you should go back to the road [patrol], because you aren't getting a break from it."

52. On June 5, 2018, Hildebrand told Sheriff Cumberworth that he was going to make

7

an appointment with Dr. Thayer for his PTSD treatments. Sheriff Cumberworth expressed skepticism about Hildebrand's symptoms and again said he should consider returning to road patrol.

53. Sheriff Cumberworth agreed to pay for an additional six therapy sessions but stated he would not pay for treatment after that and Hildebrand needed to get the issue resolved in that time. Hildebrand again inquired if a worker's compensation claim would be a more appropriate way to handle the treatments.

54. Hildebrand had more than six additional treatments, and was required to pay for the extra sessions out of his own pocket. Defendant did eventually file a worker's compensation claim on Hildebrand's behalf.

55. On June 8, 2018, Hildebrand e-mailed Major Enneking asking for vacation time. Sheriff Cumberworth met with Hildebrand that afternoon and asked Hildebrand how his plate was full when Hildebrand did not have any active investigations, and that the Sheriff "gives [Hildebrand] anything he asks for." Hildebrand stated he was asking for a break from death investigations because they trigger his PTSD. The Sheriff told Hildebrand if he didn't want to see dead bodies, then he would make Hildebrand the jail administrator and "that's the worst job of all."

56. On or about June 17, 2018, Hildebrand's counsel provided notice to Defendant that Hildebrand planned on filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC acknowledged receipt of the charge with a file-marked date of June 27, 2018. Hildebrand's notice of intent to file a Charge of Discrimination and his filing of a Charge of Discrimination with the EEOC constitute protected activity.

57. Hildebrand's Charge of Discrimination alleged discrimination on the basis of his disability, a failure to accommodate and engage in the interactive process with Hildebrand, all in violation of the Americans With Disabilities Act ("ADA").

58. Hildebrand took vacation from July 3, 2018 through July 15, 2018.

59. On July 16, 2018, Hildebrand returned to work for the first time following his vacation. Cumberworth asked Hildebrand to meet with him in his office.

60. Hildebrand met with Cumberworth and Enneking later that day. Cumberworth told Hildebrand he felt leaving Hildebrand in the detective's position was "setting him up to fail" and that he would be demoting him from Detective Sergeant back to road patrol.

61. Hildebrand's shift as a detective was 7 a.m. – 3 p.m. and he was "on-call" three weekends each month. When he was demoted to road patrol, he was placed on the 6 p.m. – 4 a.m. overnight shift, Tuesday through Friday. When the new shift was presented to the Sheriff, Cumberworth added three Saturdays per month to Hildebrand's schedule. This is an objectively less desirable work assignment and constitutes retaliation for Hildebrand's engagement in protected activity.

62. Defendant's adverse actions against Hildebrand constitute discrimination on the basis of his disability and/or retaliation for engaging in protected activity.

63. Defendant has afforded more favorable treatment to similarly-situated, non-disabled employees and/or employees who did not request an accommodation and/or did not engage in protected activity.

64. Defendant has failed to accommodate Hildebrand and has failed to engage in the interactive process.

65. Hildebrand has suffered and continues to suffer damages as a result of Defendant's actions.

66. Any facially non-discriminatory and/or legitimate business reasons proffered by Respondent for its discriminatory and retaliatory actions are pretext for unlawful discrimination.

## V. CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF THE ADA - FAILURE TO ACCOMMODATE

67. Hildebrand hereby incorporates paragraphs one (1) through sixty-six (66) of his Complaint.

68. Defendant violated Hildebrand's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. by failing to grant reasonable accommodations and/or engage in the interactive process with Hildebrand.

69. Defendant's actions were intentional, willful and in reckless disregard of Hildebrand's rights as protected by the ADA.

70. Hildebrand has suffered damages as a result of Defendant's unlawful actions.

### COUNT TWO: VIOLATIONS OF THE ADA - DISCRIMINATION

71. Hildebrand hereby incorporates paragraphs one (1) through seventy (70) of his Complaint.

72. Defendant violated Hildebrand's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. by refusing to return Hildebrand to work and eliminating his position because of his disability, record of disability and/or Defendant's perception that Hildebrand is disabled.

73. Defendant's actions were intentional, willful and in reckless disregard of Hildebrand's rights as protected by the ADA.

74. Hildebrand has suffered damages as a result of Defendant's unlawful actions.

## COUNT THREE: VIOLATIONS OF THE ADA - RETALIATION

75. Hildebrand hereby incorporates paragraphs one (1) through seventy-four (74) of his Complaint.

76. Defendant disciplined and terminated Hildebrand in retaliation for his engagement in the statutorily protected activity of requesting reasonable accommodations for his disability and filing a Charge of Discrimination with the EEOC.

77. Defendant's unlawful actions were intentional, wilful, and done in reckless disregard of Hildebrand's rights as protected by the ADA.

78. Hildebrand has suffered harm as a result of Defendant's unlawful acts.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Abraham Hildebrand respectfully requests that this Court enter judgment in his favor as follows:

1. Find and hold that Hildebrand has suffered from Defendant's acts of unlawful discrimination and retaliation and issue a declaratory judgment that Defendant's acts violated the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.,* and/or;

2. Permanently enjoin Defendant, its officers, agents, employees and attorneys acting in concert with them from engaging in any employment policy or practice that discriminates against any person for exercising his or her statutorily protected rights, and/or;

3. Order Defendant to pay Hildebrand all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions, and/or;

  4.  Order Defendant to reinstate Hildebrand to his previous position and shift or pay Hildebrand front pay in lieu thereof, and/or;

  5.  Order Defendant to pay compensatory and/or punitive damages to Hildebrand, and/or;

  6.  Order Defendant to pay to Hildebrand all costs and attorney's fees incurred as a result of him bringing this action, and/or;

  7.  Order Defendant to pay to Hildebrand pre- and post-judgment interest on all sums recoverable, and/or;

  8.  Award all other relief that is just and proper.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin (#7576-49)

*s/ Eric J. Hartz*
Eric J. Hartz (29676-49)

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, IN 46204
Telephone: (317) 955-9500
Facsimile: (317) 955-2570
E-Mail: jhaskin@jhaskinlaw.com
    ehartz@jhaskinlaw.com

Attorneys for Plaintiff
Abraham Hildebrand

## **DEMAND FOR JURY TRIAL**

Plaintiff, Abraham Hildebrand, by counsel, demands a trial by jury on all issues deemed so triable.

        Respectfully submitted,

        *s/ John H. Haskin*
        John H. Haskin (#7576-49)